IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| JAMES PURDHAM and MICHAEL BOUCHARD, ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | 1:09cv50 (JCC) |
| FAIRFAX COUNTY PUBLIC SCHOOLS, ) ) ) ) | |
| Defendant. ) | |

### **M E M O R A N D U M   O P I N I O N**

This matter comes before the Court on Plaintiffs' Motion for Notice to Similarly Situated Employees. For the reasons stated below, the Court will deny Plaintiffs' motion.

### **I.  Background**

Plaintiffs James Purdham ("Purdham") and Michael Bouchard ("Bouchard") (collectively, "Plaintiffs") claim that they and other similarly situated employees and former employees of Defendant Fairfax County Public Schools[1] (the "Fairfax County School Board" or "FCSB") were denied proper overtime payments in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"). After the hearing on the instant motion,

---

[1] Defendant avers that the named defendant, Fairfax County Public Schools, is not a legal entity. (Mem. in Opp'n 1 n.1.) Instead, it explains, the defendant party should be the Fairfax County School Board, the legal entity created and authorized to supervise the Fairfax County education system. (Mem. in Opp'n 1 n.1.) The Court will refer to it by the latter name.

1

Plaintiffs filed an amended complaint ("Amended Complaint") adding allegations that the FCSB also failed to pay the statutorily-required minimum hourly wage to the employees and former employees who were allegedly denied proper overtime payments.

### 1. Allegations in the Amended Complaint

The allegations in the Amended Complaint are as follows. From at least 2005 to 2008, the FCSB employed Plaintiffs in various capacities. They provided security, athletic coaching, and ticket-taking services. (Am. Compl. ¶ 5.) Plaintiffs' positions were non-exempt under the FLSA. (Am. Compl. ¶ 6.) They, and other similarly situated FCSB employees, worked more than forty hours per week and were not paid proper overtime wages for the hours they spent working in excess of forty hours per week. (Am. Compl. ¶ 7.) The FCSB knew of its overtime obligations under the FLSA but willfully violated them. (Am. Compl. ¶ 12.) Plaintiffs request damages for the overtime violations and liquidated damages because the violations were willful. (Am. Compl. 4.)

The remainder of the Amended Complaint comprises allegations about the FCSB's failure to pay minimum wage. Plaintiffs state that, when the hours spent coaching and performing other services are added to their normal hours, the overall amount of money they were paid per hour falls below the

minimum hourly wage.  (Am. Compl. ¶ 16.)  The FCSB knew of its duty to pay minimum wages and knowingly failed to do so.  (Am. Compl. § 19.)  Plaintiffs seek damages for the violations and liquidated damages because the violations were willful.  They also request prejudgment interest and attorney's fees for both the overtime and minimum wage violations.  (Am. Compl. 4-5.)

### 2. Proposed Class

The precise outlines of the class that Plaintiffs purport to represent is not entirely clear from their papers.  The Amended Complaint states that Plaintiffs seek to represent a class consisting of "all past and present employees of the Fairfax County Public Schools who performed security, athletic coaching, after school monitoring, ticket-taking at athletic events and other services for Defendant in addition to their regular jobs for Defendant."  (Am. Compl. ¶ 1.)  The motion for notice that the Court is now considering, though, requests discovery regarding the names and addresses of "similarly situated employees who worked as hourly employees at any time since May 2006."  (Mem. in Supp. 1.)  The Court finds it appropriate to rely on the request in the Amended Complaint, as modified by the May 2006 cut-off date in Plaintiffs' brief, in considering the class of plaintiffs that Purdham and Bouchard claim to represent.

As part of their attempt to pursue FLSA claims for themselves and for others similarly situated – that is, as a collective action under the FLSA[2] – Plaintiffs have moved the Court to allow them to send notice to similarly situated employees so that such employees may "opt-in" to the suit. Plaintiffs also ask the Court to require the FCSB to provide them with the names and addresses of similarly situated employees.

Plaintiffs moved for notice to similarly situated employees on April 14, 2008. The FCSB opposed the motion on April 28. Plaintiffs filed a reply brief on April 29. Their motion is before the Court.

## II. FLSA Collective Action Law and Standard of Review

Under the FLSA, plaintiffs may institute a collective action against their employer on their own behalf and on the behalf of other employees. Section 216(b) of the FLSA states that:

> An action . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

The Supreme Court has held that, in order to expedite the manner in which collective actions under the FLSA are assembled,

---

[2] This case is best referred to as a "collective action" so as not to confuse it with a Rule 23 class action.

"district courts have discretion in appropriate cases to implement . . . § 216(b) . . . by facilitating notice to potential plaintiffs." *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989); *see also Shaffer v. Farm Fresh, Inc.*, 966 F.2d 142, 147 (4th Cir.), *cert. denied*, 506 U.S. 1021 (1992). The "notice" stage of an FLSA collective action is also known as the "conditional certification" stage.

"[C]ourts generally follow a two-stage approach when deciding whether the named plaintiffs in an FLSA action are 'similarly situated' to other potential plaintiffs . . . ." *Parker v. Rowland Express, Inc.*, 492 F. Supp. 2d 1159, 1164 (D. Minn. 2007); *see also Choimbol v. Fairfield Resorts, Inc.*, 475 F. Supp. 2d 557, 562 (E.D. Va. 2006). The "notice stage" comes first; if the court makes the preliminary determination that notice should be given to potential class members, it "conditionally certifies" the class and potential class members can then "opt-in." *Parker*, 492 F. Supp. 2d at 1164 (*quoting Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218 (11th Cir. 2001). After most of the discovery has taken place and the matter is ready for trial, the defendant can initiate the second stage of inquiry by moving to "decertify" the class. At that point, the court makes a factual determination as to whether the class is truly "similarly situated." *Id.*

As a general matter, then, the "notice" stage is the first in a two-stage process. When sufficient evidence in the record at the initial "notice" stage makes it clear that notice is not appropriate, however, a court can collapse the two stages of the analysis and deny certification outright. *See Holt v. Rite Aid Corp.*, 333 F. Supp. 2d 1265, 1273-74 (M.D. Ala. 2004).

A court's discretion to facilitate notice is not unfettered. Indeed, courts should not exercise their discretion to facilitate notice unless "[t]he facts and the circumstances of the case illustrate" that a class of "similarly situated" aggrieved employees exists. *Hoffmann-La Roche, Inc.*, 493 U.S. at 170. Accordingly, "[t]he relevant inquiry . . . is not whether the court has discretion to facilitate notice, but whether this is an appropriate case in which to exercise that discretion." *Camper v. Home Quality Mgmt., Inc.*, 200 F.R.D. 516, 519 (D. Md. 2000) (*citing Hoffman v. Sbarro*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)).

Ultimately, "[t]he plaintiff has the burden of demonstrating that notice is 'appropriate.'" *D'Anna v. M/A-COM, Inc.*, 903 F. Supp. 889, 894 (D. Md. 1995) (citations omitted). The plaintiff's burden of showing the existence of a potential class of similarly situated is "not onerous," but it is also "not invisible." *Parker v. Rowland Express, Inc.*, 492 F. Supp. 2d 1159, 1164 (D. Minn. 2007) (citations omitted). "Mere

allegations will not suffice; some factual evidence is necessary." *Bernard v. Household Int'l, Inc.*, 231 F. Supp. 2d 433, 435 (E.D. Va. 2002) (citation omitted).

### III. Analysis

The FCSB argues that notice to similarly situated employees is inappropriate because, first, Plaintiffs did not provide sufficient evidence that a similarly situated class of plaintiffs exists, and second, the manner in which different schools pay coaches and other arguably "volunteer" workers means that the Court would have to decide whether any FLSA violations occurred on a case-by-case basis, which would destroy the efficiency rationale for a collective action.

A. <u>Legal Standard for Conditional Certification</u>

"Determining whether . . . a collective action is the appropriate means for prosecuting an [FLSA] action is in the Court's discretion." *Smith v. Heartland Auto. Servs., Inc.*, 404 F. Supp. 2d 1144, 1149 (D. Minn. 2005) (citation omitted). At the "notice" stage, the burden on the plaintiff to show the existence of a putative class of "similarly situated" persons is relatively light. *Id.*

While the Fourth Circuit has not settled on a test for conditional certification in an FLSA action, *see Bernard v. Household Int'l, Inc.*, 231 F. Supp. 2d 433, 435 (E.D. Va. 2002), the question arises with some regularity at the district level.

One case in this district described the plaintiff's burden at the initial stage as relatively lenient, requiring only "a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Choimbol v. Fairfield Resorts, Inc.*, 475 F. Supp. 2d 557, 563 (E.D. Va. 2006) (citations omitted).  Another specifically required the plaintiffs to show some evidence that other potential plaintiffs were similarly situated – "[m]ere allegations will not suffice; some factual evidence is necessary." *Bernard*, 231 F. Supp. 2d at 435 (*citing D'Anna v. M/A-COM, Inc.*, 903 F. Supp. 889, 893-94 (D. Md. 1995)).  The *Bernard* court denied the plaintiffs' request for notice when they did not provide evidence sufficient "to support allegations that defendant has a company-wide policy resulting in potential FLSA violations." *Id.*

Other courts have required the named plaintiff in a putative collective action to "proffer some evidence that other similarly situated individuals desire to opt in to the litigation," because, "[i]n the absence of such evidence, there would be no basis upon which the Court could conclude that the action was an 'appropriate case' for collective-action treatment." *Parker v. Rowland Express, Inc.*, 492 F. Supp. 2d 1159, 1164-65 (D. Minn. 2007) (relying on *Dybach v. Fla. Dep't of Corrections*, 942 F.2d 1562 (11th Cir. 1991)); *but see Mancia v.*

*Mayflower Textile Servs. Co.*, 2008 WL 4735344, at *3 n.5 (D. Md. Oct. 14, 2008) (criticizing *Parker* for construing the FLSA too narrowly). It does not appear that any courts within the Fourth Circuit have adopted this relatively stringent test.

In recognizing the ability of lower courts to facilitate notice in "appropriate cases," the Supreme Court emphasized the efficiency gained by grouping "common issues of law and fact arising from the same alleged discriminatory activity" into a single proceeding. *See Hoffmann-La Roche*, 493 U.S. at 170. Thus, where multiple claims can be adjudicated efficiently because they share common underlying facts and do not require substantial individualized determinations for each class member, a court should conditionally certify the proposed class. *See Houston v. URS Corp.*, 591 F. Supp. 2d 827, 831-32 (E.D. Va. 2008). In order to make this determination, however, a court must have the benefit of "some preliminary factual showing that a similarly situated group of potential plaintiffs exists." *D'Anna*, 903 F. Supp. at 894.

   B. <u>Necessity of Individualized Determinations</u>

In this case, even if the Court assumed that a group of similarly-situated potential plaintiffs exists, it would deny Plaintiffs' request for notice. For the reasons stated below, the Court finds that conditional certification is inappropriate

9

because of the probable necessity of an individualized FLSA coverage determination for each member of the potential class.

Each Fairfax County public school exercises substantial discretion over the athletic and other activity "supplements" paid to the "volunteers" who provide athletic coaching services.[3] No county-wide guidelines enforce a uniform distribution of supplements or regulate the number of hours that employees can devote to coaching and other volunteer activities. And the number of hours that different coaches work varies widely between sports and between coaches at different schools within the same sport. The amount of money that different coaches at different schools receive as a "supplement" – and the amount they receive per hour of coaching – also varies significantly.

The FCSB submitted evidence showing that the stipend paid to coaches and the amounts paid to ticket-takers are determined locally, within each individual school. (Curran Decl. ¶¶ 8-11; Dall Decl. ¶ 8; Kelly Decl. ¶ 7; Gordon Decl. ¶¶ 11-13; Swarm Decl. ¶¶ 8, 11.) Similarly, the hours that coaches work are determined by the coaches themselves. As a result, the amount of money each coach is paid as a "stipend," when computed as an hourly rate, varies widely between coaches. The hourly pay

---

[3] Each year, the FCSB releases a schedule of "supplements," also referred to as "stipends," to each school; officials at each school then decide how to distribute the stipends among coaches, assistant coaches, and other personnel. (Mem. in Opp'n 7, ¶¶ 2-4; Ex. , Decl. of William Curran ¶¶ 2, 5 & Ex. A.)

for coaching, then, depends on two inter-connected but localized decisions: the apportionment of the "supplement" between coaches and other athletic officials, and the amount of time that a particular coach chooses to devote to his or her coaching duties. The FCSB also has no input into the selection of coaches. (Dall Decl. ¶¶ 3-6; Gordon Decl. ¶¶ 3-6; Kelly Decl. ¶¶ 305; Swarm Decl. ¶¶ 3-6.)

Likewise, ticket-takers generally "volunteer" on an event-by-event basis, although practices vary between schools. Some are paid by the school, while others are paid by local "Booster Clubs." (Curran Decl. ¶¶ 15-18.) The method by which ticket-takers volunteer and are compensated is determined locally, within each individual school. (Curran Decl. ¶ 15.)

The FCSB agrees with Plaintiffs that non-exempt employees have performed certain services that, when combined with their regular work hours, add up to more than forty hours per week during some weeks. It also agrees that it did not pay overtime for those services. (Mem. in Opp'n 24.) Rather than dispute these facts, the FCSB argues that conditional certification is not appropriate because, under FLSA statutes and related regulations, claims by coaches and ticket-takers will have to be evaluated on an individual-by-individual basis. The Court agrees with the FCSB: because the method by which coaches and ticket-takers are paid and the amount of money they are paid

11

vary widely among individual schools, each FLSA claim will have to be evaluated on its own merits.

If public employees "volunteer" for outside services that are not similar to their regular employment duties, they are not considered "employees" when they perform those services and either receive no compensation or are paid expenses, reasonable benefits, or a "nominal fee." 29 U.S.C. § 203(e)(4)(A); *see also* 29 C.F.R. § 553.106(e). "A nominal fee is not a substitute for compensation and must not be tied to productivity." 29 C.F.R. § 553.106(e). The factors examined in determining whether a fee is "nominal" include:

> The distance traveled and the time and effort expended by the volunteer; whether the volunteer has agreed to be available around-the-clock or only during certain specified time periods; and whether the volunteer provides services as needed or throughout the year.

*Id.* Because the Court will likely need to make an individual determination as to whether the amount paid to each non-exempt employee who provides coaching services is "nominal," and because the amount varies for coaches within each school and among all schools in the County, the Court finds that such claims are not appropriate for a collective action. The same legal analysis will likely apply to ticket-takers who are paid flat fees that vary significantly between schools, making these claims inappropriate for a collective action as well.

12

Similarly, with regard to ticket-taking for which non-exempt employees receive payment by the hour – as Purdham does – similar individualized determination will be necessary to determine whether such payment violates FLSA overtime provisions. If public employees undertake employment different from their regular employment with the same public agency "on an occasional or sporadic basis and solely at the employee's option," the employer can exclude those additional part-time hours from the FLSA calculus. 29 U.S.C. § 207(p)(2). Because ticket-takers at different schools vary in the regularity with which they perform ticket-taking activities, the "occasional or sporadic" inquiry will also be highly individualized. Those who regularly perform ticket-taking activities or can prove that performing such extra work is not "optional" may have a valid FLSA claim. But the Court will need to make that inquiry on a case-by-case basis.

Courts have explained that collective actions may be inappropriate where no "common plan or policy" on reimbursement exists. *Choimbol*, 475 F. Supp. 2d at 564. "Courts have ruled that where FLSA claims require significant individual determinations and considerations, they are inappropriate for conditional certification under section 216(b)." *Hinojos v. Home Depot, Inc.*, WL 3712944, at *2 (D. Nev. 2006) (*citing*, *inter alia*, *Mooney v. Aramco Servs.*, 54 F.3d 1207, 1213-14 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v.*

13

*Costa*, 539 U.S. 90 (2003)). Thus, where a trial would require "individualized determinations to resolve the claims of each plaintiff," certification as a collective action may be inappropriate. *Id.* at *3. The facts here present just such a case.

Plaintiffs raise several arguments in opposition. They note that the FCSB transmits a coaching supplement schedule each year listing the "stipend" amounts available for coaches in different sports. (Pls.' Ex. 7.) Plaintiffs also show that Purdham signed an "Athletic Coaching Contract" that, in 2007 and 2008, referred to "employment" and was signed by the Chairman of the FCSB as well as the principal of Purdham's school. (Pls.' Ex. 8.) The 2005 contract Purdham signed shows that he was being paid the equivalent of $14.00 per hour for coaching. (Pls.' Ex. 8 at 1 ¶ 6.) It also states that overtime will be paid if the combination of coaching hours and normal school hours totals more than forty hours in a workweek. (Pls.' Ex. 8 at 1 ¶ 6.) The subsequent contracts do not contain this provision. These contracts, Plaintiffs explain, are required under Virginia law. *See* Va. Code Ann. § 22.1-302(C) ("A . . . contract [separate and apart from the teaching contract] in a form prescribed by the Board of Education shall be executed by the school board with such employee who is receiving a monetary supplement for any athletic coaching . . . assignment.") Additionally, an internal

14

FCSB memorandum dating from 2005 stated that non-exempt employees were not to hold supplemental assignments after July 1, 2006. (Pls.' Ex. 9.)

Plaintiffs claims that this evidence proves that the FCSB generally considers its coaches to be "employees"; thus, they argue, the Court need not inquire into whether coaches are "employees" rather than "volunteers" on a case-by-case basis. The Court does not agree.  First, state law requires the FCSB to make a separate contract with each teacher who engages in coaching and certain other supplemental activities.  The state law at issue, however, does not, by its terms, create a presumption of "employment" under the FLSA.[4]  The use of the term "employee" within a state law does not control the definition of "employee" within the FLSA, where it is used as a term of art. *See, e.g.*, 29 U.S.C. § 203(e)(4)(A).  Indeed, that state-required contracts are cited as one of the only direct ties between the individual coaches and the school board weakens, rather than strengthens, Plaintiffs' claim of uniform treatment.

Second, the 2006-2008 contracts' inclusion of the phrase "this employment" is also not determinative of whether the FCSB considered coaching to be part of the "employment" subject to the FLSA's wage and hour requirements.  In fact, the

---

[4] The statute also appears to apply only to teachers and temporarily-employed teachers rather than to non-exempt employees like Plaintiffs.  Va. Code Ann. § 22.1-302(A)-(B).

15

contractual term appears in a sentence limiting the rights of the coach rather than expanding them. Third, at the hearing on this motion, counsel for FCSB acknowledged that it does issue a uniform amount of "stipend" money to each school for each specific type of coaching position. *See* Pls.' Ex. 7. It averred, however, that the stipend money is distributed to the coaches based wholly on the discretion of the local school officials. Plaintiffs did not challenge this contention.

Plaintiffs' most compelling pieces evidence are what appear to be FCSB internal policy memoranda. (Pls.' Exs. 9, 10, 12, 14.) This information, however, does not rebut the testimony submitted by Defendant showing that the amount paid to individual coaches and other supplemental service providers is determined at the local level and varies widely between individuals. Moreover, the FCSB is not necessarily bound by its earlier policies; it can change them based on new law, regulations, and administrative guidance.

Overall, Plaintiffs failed to rebut the FCSB's assertions that the compensation for supplemental services varies by school and, within each school, by individual. The test for whether an individual is a "volunteer" or an "employee" under the FLSA involves a multi-pronged analysis directed at determining whether the stipends paid are "nominal," *see* 29 C.F.R. § 553.106(e), and whether the hourly-compensated ticket-taking is

16

"sporadic or occasional," *see* 29 U.S.C. § 207(p)(2). It appears that each individual's case will require the Court to consider different background facts, different testimony, and different legal issues.

Even though Plaintiffs have an admittedly low hurdle at the conditional certification stage, the Court cannot ignore salient facts that suggest that this case, as presented here, is not a suitable vehicle for a collective action. Few of the most relevant facts will be common to the proposed class as a whole. *See Hoffmann-La Roche*, 493 U.S. at 170. In contrast to the situation in *Houston v. URS Corp.*, the Court will not be able to efficiently adjudicate the multiple claims in the Plaintiffs' proposed class. 591 F. Supp. 2d 827, 831-32 (E.D. Va. 2008). Those claims will require substantial individualized determinations for each putative class member. There is sufficient evidence in the record to determine, even at this early stage, that certification will not be appropriate here. The Court will deny Plaintiffs' motion. *See Holt v. Rite Aid Corp.*, 333 F. Supp. 2d 1265, 1273-74 (M.D. Ala. 2004).

Because the Court has determined that conditional certification is not appropriate based on the probable necessity of individualized FLSA determinations for each putative class member, it will not address the FCSB's alternative argument that Plaintiffs did not submit sufficient evidence of the existence of

17

a class. *See Dybach v. Florida Department of Corrections*, 942 F.2d 1562 (11th Cir. 1991) (holding that a district court "should satisfy itself that there are other employees . . . who desire to 'opt-in'" before granting conditional certification); *Parker v. Rowland Express*, 492 F. Supp. 2d 1159 (D. Minn. 2007) (same); *but see Quinteros v. Sparkle Cleaning, Inc.*, 532 F. Supp. 2d 762, 772 n.6 (D. Md. 2008) (questioning the rationale behind *Parker*); *Mancia v. Mayflower Textile Servs. Co.*, 2008 WL 4735344, at *3 n.5 (D. Md. Oct. 14, 2008) (same).

The Court is aware that it makes this determination at a preliminary stage of the litigation. The decision is a fact-intensive one, and thus the Court's ruling should not be understood to foreclose the possibility of collective certification for other FLSA actions related to coaching or other school-related activities when the underlying facts makes such cases appropriate for collective action.

### IV. Conclusion

For the foregoing reasons, the Court will deny Plaintiffs' Motion for Notice to Similarly Situated Employees.

An appropriate Order will issue.

June 22, 2009　　　　　　　　　　　　　　　　／s／
Alexandria, Virginia　　　　　　　　　James C. Cacheris
　　　　　　　　　　　　UNITED STATES DISTRICT COURT JUDGE