DEC - 9 2009

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
**Alexandria Division**

JAMES PURDHAM, *et al.*,     )
                                )
       Plaintiffs,        )
                                )
v.                            )     Civil Action No.: 1:09-cv-50
                                )
FAIRFAX COUNTY SCHOOL     )
BOARD,                     )
                                )
       Defendant.       )

## MEMORANDUM OPINION

Before this Court are Plaintiff's and Defendant's cross motions for Summary Judgment

(Dkt. Nos. 52 and 30, respectively). After reviewing the pleadings by the parties, the Court finds

that there are no genuine issues of material fact, and Defendant is entitled to judgment as a

matter of law. Therefore, Defendant's Motion for Summary Judgment (Dkt. No. 30) is granted,

and Plaintiff's Motion for Summary Judgment (Dkt. No. 56) is denied.

I.     **Background**

Plaintiff, James Purdham, is an employee of Fairfax County Public Schools. He has been

employed by the School Board since October 1994 as a Safety and Security Assistant at Hayfield

Secondary School. (James Purdham Deposition Transcript ("Purdham Dep.") at 16-17). In his

position as a security officer, Plaintiff's duties consist of monitoring and policing designated

areas of the Hayfield campus to "communicate security concerns" and "glean security

information," assisting with investigations and emergencies, patrolling the parking lots,

reminding students not to block hall intersections, and monitoring the arrival and departure of

buses. (Purdham Dep. at 157-58, 163; Purdham Deposition Exhibits ("Purdham Dep. Ex.") 4,

1

6). Plaintiff's current annual salary is $36,224 which the School Board pays him in monthly installments. (Purdham Dep. at 18-19; Declaration of Paula Jett ("Jett Decl.") at ¶ 2).

For the last 15 years Plaintiff has also coached the golf team at Hayfield. The golf season runs from August to November every year, during which time Plaintiff's activities as coach include holding tryouts to select members of the team, scheduling practices and matches, and coaching the players during practices and matches. (Purdham Dep. at 75-92). Plaintiff drives himself to and from the practices and matches, and sometimes drives students home as well. (Purdham Dep. at 93-95). In the 2007 season, Plaintiff received reimbursement for 2,526 miles he drove for golf coaching activities, and in 2008 he received reimbursement for 1,470 miles. (Purdham Dep. at 127-132; Purdham Dep. Ex. 18). During the other months of the year Plaintiff spends time making phone calls and writing letters to college recruiters as well as preparing for the upcoming season and answering phone calls and emails from parents and players. (Purdham Dep. at 106-09, 132-133). Plaintiff estimates that he spends somewhere between 300-450 hours per year on golf. (Purdham Dep. at 118, 248-49, 301-04; Dep. Exh. 16, 29). Plaintiff is given a stipend for coaching the golf team. His stipend was $2,073 for the 2007-2008 school year, and it was $2,114 for the 2008-2009 school year. (Purdham Dep. 115).

The School Board operates the Fairfax County Public School system and, through the Board's Director of Student Activities, William Curran, oversees all activities and athletic programs in all county schools, including the 25 high schools. (Declaration of William Curran ("Curran Decl.") at ¶ 1). For the 2008-2009 school year, the School Board had 21 sports and 23 student activity classifications. Coaches, directors, and advisers are placed by the respective schools to oversee each of these sports and activity classifications for a seasonal or year-round term. (Curran Decl. at ¶ 2). As in prior academic years, the School Board released to each

2

school a schedule of stipends to be paid to individuals who serve as coaches, directors, and advisers. (Curran Decl. at ¶ 3). The stipend for Plaintiff and for all other high school golf coaches in Fairfax County is the same. (Jett Decl. at ¶¶ 3, 5). It is a flat-rate stipend and does not change based on productivity or how many matches a coach wins. (Purdham Dep.at 134-35; Curran Decl., ¶ 11).

## II.     Procedural History

On January 16, 2009, Plaintiff[1] filed his complaint against the Fairfax County School Board alleging that the Board had failed to pay Plaintiff overtime in violation of the Fair Labor Standard's Act ("FSLA"), 29 U.S.C. § 207.  In later pleadings, Plaintiff narrowed his complaint, specifically alleging that he was owed overtime for his work as the school's golf coach, for taking tickets at sporting events, and for hours worked in his capacity as a security guard.  On September 11, 2009 Defendant filed a motion for summary judgment.  On October 8, 2009 Plaintiff filed a cross-motion for summary judgment.  A hearing was held on October 30, 2009 for both parties' summary judgment motions at which time the Court took the motions under advisement.  On November 10, 2009 the parties participated in a settlement conference, during which some of the claims asserted by Plaintiff were resolved.  The sole remaining claim before the Court is Plaintiff's allegation that Defendant owes him overtime wages for his coaching of the golf team.

## III.    Discussion

### A.     *The Board is not entitled to sovereign immunity*

---

[1] When the complaint was first filed, James Purdham was not the only plaintiff; however, all other parties have since been dismissed from the case.

It is well-established law that under the Eleventh Amendment, an unconsenting state is immune from suit brought in federal court by her own citizens as well as those of another state. *Edelman v. Jordan*, 415 U.S. 651, 662-663 (1974). The Supreme Court has held that this protection extends to "state agents and state instrumentalities," *Regents of the Univ. of California v. Doe*, 519 U.S. 425, 429 (1997), or put in other terms, to "arm[s] of the State" and State officials, *Mt. Healthy City Sch. Dist. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977). Eleventh Amendment immunity, however, does not apply to "counties and similar municipal corporations." *Id.* In *Mt. Healthy*, the Supreme Court held that a local school board, as constituted by Ohio law, is "more like a county or a city than it is like an arm of the State," and therefore was not entitled to sovereign immunity under the Eleventh Amendment. *Id.*

The question before the Court then is whether the Fairfax County School Board as established by Virginia law "is to be treated as an arm of the State partaking of the State's Eleventh Amendment immunity, or instead to be treated as a municipal corporation or other political subdivision to which the Eleventh Amendment does not extend." *Cash v. Granville County Board of Education*, 242 F.3d 219, 222 (4th Cir. 2001) (citing *Mt. Healthy*, 429 U.S. at 280). The Fourth Circuit has held that in order to determine whether a governmental entity is covered by the Eleventh Amendment, the principal factor for consideration "is whether a judgment against the governmental entity would have to be paid from the State's treasury." *Cash*, 242 F.3d at 223. The Defendant argues that in light of recent Supreme Court decisions, namely *Federal Maritime Commission v. South Carolina State Ports Authority*, 535 U.S. 743, 765 (2002), the question of whether the claims at issue will deplete the state's treasury is no longer central to the sovereign immunity analysis. In *Federal Maritime*, the Supreme Court stated that "[while] state sovereign immunity serves the important function of shielding state

treasuries and thus preserving 'the States' ability to govern in accordance with the will of their citizens,' *Alden v. Maine*, 527 U.S. 706, 750-51 (1999), the doctrine's central purpose is to 'accord the States the respect owed them as' joint sovereigns." *Federal Maritime*, 535 U.S. at 765. Notwithstanding the *Federal Maritime* decision, in a recent unpublished opinion, the court in the Western District of Virginia, in analyzing whether a school board should be entitled to sovereign immunity, quoted *Cash* and held that the treasury factor is the principal factor for courts to consider; however, it is worth noting that the court made no reference to the Supreme Court's decision in *Federal Maritime*. *Cole v. Buchanan County Sch. Bd.*, 2009 WL 3286106 at *1 (W.D. Va. Oct. 1, 2009). Given the facts of the case at issue, the Court finds it does not need to reach the question of exactly what weight the treasury factor should be given in the sovereign immunity analysis, but considering both the Fourth Circuit's analysis in *Cash* and the Supreme Court's decision in *Federal Maritime*, the Court finds it necessary to consider the treasury factor in combination with the other three factors laid out in *Cash*. These three additional factors that the court shall consider in examining the relationship between the local governmental entity and the State are as follows: "1) the degree of control that the State exercises over the entity or the degree of autonomy from the State that the entity enjoys; 2) the scope of the entity's concerns – whether local or statewide – with which the entity is involved; and 3) the manner in which State law treats the entity. *Cole*, 2009 WL 3286106 at * 1 (quoting *Cash*, 242 F.3d at 224).

Defendant cites Va. Code § 22.1-88 in support of its assertion that the treasury will be depleted if the Board is not entitled to sovereign immunity. Va. Code § 22.1-88 states the following:

> The funds available to the school board of a school division for the establishment, support and maintenance of the public schools in the school division shall consist of state funds appropriated for public school purposes and apportioned to the school board, federal funds appropriated for education purposes and apportioned

5

to the school board, local funds appropriated to the school board by a local
governing body or such funds as shall be raised by local levy as authorized by
law, donations or the income arising therefrom, and any other funds that may be
set apart for public school purposes.

This statute is the only source cited by Defendant in support of its claim. The Court finds that

this statute alone is insufficient as evidence that a judgment against the Board would have to be

paid from the State's treasury.

The Court must next consider the *Cash* factors. The first factor is the degree of control

that the State exercises or the degree of autonomy from the State the entity enjoys. Under

Virginia law, local school boards are autonomous corporate bodies over which the State

exercises limited control. *Cole*, 2009 WL 3286106 at *2. Under Va. Code § 22.1-71, every

school board is a "body corporate." Section 22.1-71 also proscribes that school boards may sue,

be sued, contract, be contracted with and can purchase, take, hold, lease and convey school

property, both real and personal. Additional Virginia code sections give school boards the power

to manage and control funds for the local school system, incur costs and expenses, hire an

attorney to represent the board, purchase liability and property insurance, and create policies for

commercial, promotional, and corporate partnerships between a school system and business. *See*

Va. Code §§ 22.1-82, 83, 84, 89. It is clear from the state's legislation, that school boards have

both financial autonomy as well as independent responsibilities.[2]

The second *Cash* factor the Court must consider is whether the school board is involved

in local or statewide concerns. *Cash*, 242 F.3d at 226. Under Va. Code § 22.1-79, the local

school boards are charged with determining the length of the school term, "the studies to be

pursued, the methods of teaching and the government to be employed in the schools . . . ." The

---

[2] The Court finds that the fact that county school boards receive money from the state and that they must follow statewide rules regarding aspects of course curriculum and annual budget does not outweigh the significant scope of independence afforded the local school boards.

Court recognizes that county school boards must comply with State law but finds that on balance school boards have a local focus independent of the state's concerns. *Cole*, 2009 WL 3286106 at *2. Similarly, under the third factor, the Court finds that Virginia law characterizes county school boards as local governmental entities, not arms of the state. *Id.* The section of the Virginia Code addressing civil remedies and state agencies explicitly states that local school boards are "not state agencies" and that board employees are not "state employees." *Id.* (citing Va. Code § 8.01-195.3). The Defendant cites the Supreme Court of Virginia's decision in *Kellam v. School Board of the City of Norfolk*, 202 Va. 252 (Va. 1960) as support for finding that school boards are agents of the state. The Court finds, however, that *Kellam* was a limited holding and applied only to tort claims and therefore would not apply in this case where the claim is the under the FLSA.

Based on its analysis of the three *Cash* factors combined with the fact that Defendant has not provided any evidence that the State treasury would be affected by a judgment against the School Board, the Court finds that the Fairfax County School Board is an independent local governmental agency, not an arm of the State. Therefore, the Board is not entitled to sovereign immunity under the Eleventh Amendment.

B.   *Plaintiff is not an employee under the FLSA, and therefore is not entitled to overtime pay for his work as coach of the golf team*

Under the FLSA, employers are required to pay their employees overtime for any additional hours worked beyond forty per week. 29 U.S.C. § 207(a). Under the statute, the word "employee" has a very specific definition, and if an individual does not qualify as an employee then the employer is exempt from paying that person overtime wages. The statute states:

> The term "employee" does not include any individual who volunteers to perform services for a public agency which is a State, political subdivision of a State, or an interstate governmental agency, if –

7

> (i) the individual receives no compensation or is paid expenses, reasonable benefits, or a nominal fee to perform the services for which the individual volunteered; and
>
> (ii) such services are not of the same type of services which the individual is employed to perform for such public agency.

29 U.S.C. § 203(e)(4)(A).

The issue before the Court is whether or not Plaintiff was an employee within the meaning of the statute when he acted as the coach of the golf team. If Plaintiff is not an employee, then the Board is exempt from paying Plaintiff overtime wages. In determining whether Plaintiff is an employee, the Court must look to four factors under the statute: 1) did Plaintiff volunteer; 2) is the Board a public agency which is a State, political subdivision of a State or an interstate governmental agency; 3) did Plaintiff receive no compensation or is paid expenses, reasonable benefits, or a nominal fee to perform the services for which he volunteered; and 4) are the services Plaintiff performed in his capacity as a golf coach not of the same type he is employed by the Board to perform in his capacity as a security guard. If all four questions are answered in the positive, then Plaintiff is not an employee under the statute, and therefore is not owed overtime.

The Court will address questions two and four first as they do not require as much analysis. The School Board was created pursuant to Article VIII, Section 7 of the Virginia Constitution to supervise the Fairfax County schools. "The power to operate, maintain and supervise public schools in Virginia is, and always has been, within the exclusive jurisdiction of the local school boards . . . ." *Bradley v. Sch. Bd. of City of Richmond*, 462 F.2d 1058, 1067 (4th Cir. 1972), *aff'd* 412 U.S. 92, 93 S. Ct. 1952 (1973). Pursuant to this, the Court finds that the School Board is a political subdivision of the State. As to the fourth question, it is self-evident that the services Plaintiff performed as a golf coach were not the same as the services he

8

performed as a security guard. Plaintiff's duties as a golf coach involved scheduling matches, choosing which players would make up the team, and helping the players with their golf skills – typical duties of any coach. On the other hand, his duties as a security officer entailed policing the school grounds for signs of trouble, intervening during emergencies to keep students safe, and investigating incidents related to security issues. The Court finds the Defendant's analysis of this issue is directly on point: "In short, Purdham's job of breaking up fights and confiscating contraband is not the 'same type of service' as advising a golfer to lay up rather than go for the green."

The next issue the Court must address is whether Plaintiff "volunteered" to be coach of the golf team. Whether an individual is an employee or a volunteer under the FLSA is a question of law for the Court to determine. *Cleveland v. City of Elmendorf*, 388 F.3d 522, 526 (5th Cir. 2004). The United States Department of Labor's ("DOL") regulations define a volunteer as an "individual who performs hours of service for a public agency for civic, charitable, or humanitarian reasons, without promise, expectation or receipt of compensation for services rendered." 29 C.F.R. § 553.101(a). Additionally, the regulations state that the volunteer's services must be "offered freely and without pressure or coercion, direct or implied, from an employer." 29 C.F.R. § 553.101(c). When analyzing the question of whether an individual is a volunteer, the Court will look at the objective facts surrounding the services performed to determine whether the totality of the circumstances supports a holding that, under the statute and under the regulations, the individual is a volunteer. *Cleveland*, 388 F.3d at 527, *see Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 295 (1985).

The Court now turns to the facts of this case. Plaintiff states in his deposition that he became coach of the golf team when the director of athletics at Hayfield asked him whether he

9

would be interested in the position. (Purdham Dep. at 41). Plaintiff states that he was never coerced into being a coach and his employment as a security guard was not dependent on his choosing to continue coaching; he is free to quit at anytime. (Purdham Dep. at 125-127). As to the reasons Plaintiff chose to coach the gold team, he states in his deposition that he coaches golf "in part for the money," but also because he loves golf. (Purdham Dep. at 118). He states that not only does he enjoy coaching, he gets satisfaction out of it. *Id.* In *Benshoff v. City of Virginia Beach*, 180 F.3d 136, 145, the Fourth Circuit held that the mere fact that the City of Virginia Beach provided some financial assistance to its volunteers was not sufficient to find that the individuals were employees under the FLSA. Additionally, in *Todaro v. Township of Union*, 40 F. Supp. 2d 226, 230 (D. N.J. 1999), the court found that the regulatory definition of volunteer does not require that the individual be exclusively motivated by a "civic, charitable, or humanitarian" reason; instead, the court reasoned that the phrase should be modified to include an implied "at least in part." 40 F. Supp. 2d at 230. While Plaintiff stated several different figures for the number of hours he spent per year on coaching, the average figure he gave is around 350 to 400 hours. Even if we assume he only worked 350 hours, he was only paid $6.05 per hour in 2008 and $5.90 per hour in 2007, both of which are below the federal minimum wage. The fact that Plaintiff is making so little, when compared to how many hours he puts into coaching, weighs in favor of a finding that Plaintiff volunteered. The Court also finds it significant that a considerable number of other coaches in Fairfax County, all whose positions can be equated with Plaintiff's coaching position, clearly consider themselves volunteers.[3] Thus, after examining the totality of the circumstances the as well as the specific facts surrounding Plaintiff's role as coach of the golf team, the Court finds that Plaintiff volunteered to be the golf

---

[3] See Declarations of Anver Ansari, Andrew Baird, Joshua Culver, T.J. Dade, Joseph Fitterer, Bridgette Hamilson, Prince Hill, Brian Magaha, Galvin Morris, Chris Pellegrini, Leon Riddick, Ian Salvary, Paulette Stringfield, Anthony Thomas, Chris Tippins, Scott Tominson, Mark Travis, Edward Walowac, Virginia White.

coach, notwithstanding the fact that he stated that he coached at least in part for the money.

The last question for the Court to address is whether the stipend that Plaintiff receives is nominal. Congress amended the FLSA in 1985 to include a "nominal fee" provision, but no Court has yet determined whether stipends for extracurricular school activities qualify as "nominal," and there is very little case law on the issue of nominal fees in general. A DOL regulation states the following regarding nominal fees:

> A nominal fee is not a substitute for compensation and must not be tied to productivity . . . .The following factors will be among those examined in determining whether a given amount is nominal: The distance traveled and the time and effort expended by the volunteer; whether the volunteer has agreed to be available around-the-clock or only during certain specified time periods; and whether the volunteer provides services as needed or throughout the year.

29 C.F.R. § 553.106(e). The regulation further states that one must answer the nominal fee question by examining "the total amount of payments made . . . in the context of the economic realities of the particular situation." 29 C.F.R. § 553.106(f).

The Court finds, after examining the facts relevant to Plaintiff's coaching position, that the stipend meets all of the qualifications of a nominal fee. Plaintiff is paid a set stipend every year, the same as all other golf coaches in the county. For the 2007-2008 and 2008-2009 school-years the stipend amount was $2,073 and $2,114, respectively. The amount that he is paid is not tied to his productivity and does not vary depending on how much time he spends on coaching or on how well the team performs during the season. Any coach is free to spend as much or as little time as he or she wants on coaching and activities related to his or her team, and the stipend remains constant. In his deposition Plaintiff testified that he does the most work as a coach during the months between June and November, but that even during the other months he is answering emails, phone calls, and text messages related to coaching and meeting with college recruiters (Purdham Dep. at 58, 106-108). Plaintiff is available to his players around the clock,

testifying that he even receives text messages from his players while eating dinner with his family and drives players home when their parents are late or unable to pick them up. (Purdham Dep. at 94, 127, 250-251). The Court must also look to the economic realities of the situation. As was discussed previously, the stipend that Plaintiff receives for coaching golf worked out to a payment of only $6.05 per hour in 2008 and $5.90 per hour in 2007, both of which are below the federal minimum wage. This is in comparison to the $25.69 per hour he is being paid for his employment as a Safety and Security Assistant. Based on these facts, the Court cannot find that Plaintiff is being paid a salary for his services as a golf coach. Instead, the Court finds it clear that the stipend Plaintiff received is a nominal fee. Therefore, Plaintiff meets all of the elements of a volunteer and not an employee under the statute.

IV.    **Conclusion**

For the foregoing reasons, the Court finds that there are no genuine issues of material fact, and thus the Defendant is entitled to summary judgment under Fed. R. Civ. P. 56(c).


December 9, 2009
Alexandria, Virginia

                                            /s/
                                            Liam O'Grady
                                            United States District Judge

12